

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1522 | **DATE** | 10/22/2003 |
| **CASE TITLE** | LORI SCHROTT vs. BRISTOL-MYERS SQUIBB CO., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions to exclude the testimony of Nachman Brautbar [51-1] and for summary judgment [45-1] are granted. On the court's own motion, defendants Aesthetech Corporation and Natural Y Surgical Specialties, Inc. are dismissed without prejudice. Defendants' remaining motions *in limine* [48-1][49-1][50-1][52-][58-1] are moot. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORI SCHROTT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 1522 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| BRISTOL-MYERS SQUIBB CO., THE COOPER | ) | |
| COMPANIES, INC., AESTHETECH CORP., | ) | |
| NATURAL Y SURGICAL SPECIALTIES, INC. | ) | |
| and MEDICAL ENGINEERING CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Lori Schrott ("Schrott") originally filed this action against Bristol-Myers Squibb Company ("Bristol-Myers"), The Cooper Companies, Inc. ("Cooper"), Aesthetech Corporation ("Aesthetech"), Natural Y Surgical Specialties, Inc. ("Natural Y") and Medical Engineering Corporation ("MEC") in the Circuit Court of Cook County, Illinois, for negligent infliction of emotional distress, negligent failure to warn, violation of the Illinois Consumer Fraud Act, strict tort liability and breach of implied warranty. Bristol-Myers, Cooper and MEC (collectively, "defendants") move for summary judgment pursuant to Fed. R. Civ. P. 56. In addition, defendants move to exclude the testimony of Dr. Nachman Brautbar.

### BACKGROUND

**I. Defendants' Motion to Exclude the Testimony of Dr. Nachman Brautbar**

Evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Therefore, the court must first determine the

1

83

admissibility of relevant evidence presented by the parties before reaching the merits of defendants' summary judgment motion.

Defendants move to bar Schrott's proposed expert, Dr. Nachman Brautbar, from testifying regarding causation.[1] Defendants claim Dr. Brautbar's unqualified testimony is unreliable and, therefore, inadmissible under Fed. R. Evid. 702 as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Schrott responds that *Daubert* does not apply in diversity cases.

Contrary to Schrott's contention, the Federal Rules of Evidence provide the standard for admitting expert scientific testimony in a federal trial. *See Daubert*, 509 U.S. at 582 (interpreting Fed. R. Evid. 702 in a diversity case). Indeed, Schrott fails to offer any legal authority for her frivolous argument. Schrott bears the burden of establishing the admissibility of Dr. Brautbar's testimony by a preponderance of the evidence under *Daubert*. *Id.* at 592.

Fed. R. Evid. 702 permits a witness to testify as an expert if he is "qualified by knowledge, skill, experience, training, or education." Defendants assert that Dr. Brautbar is not qualified to testify about the specific neurological or cardiologic effects of toluene diamine or toluene diisocyanate on the human body. Schrott does not offer any evidence regarding Dr. Brautbar's qualifications. Therefore, Schrott fails to meet her burden of establishing Dr. Brautbar is qualified to render an opinion regarding the cause of her injuries. *See Albrechtsen v. Board of Regents*, 309

---

[1] Although Schrott fails to offer Dr. Brautbar's testimony to establish causation, defendants concede Dr. Brautbar's testimony is relevant to this issue. *See* Def. Motion at 10 ("plaintiff will introduce the testimony of only one licensed physician, Dr. Nachman Brautbar, to establish a link between her claimed neurological problems and her implants").

F.3d 433, (7th Cir.2002), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)("'Judges are not like pigs, hunting for truffles buried in' the record").

Even if Dr. Brautbar were qualified, Schrott fails to demonstrate that his opinion is reliable. The Supreme Court set forth five factors to guide a court in assessing the reliability of scientific expert testimony: (1) "whether a theory or technique . . . can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique or method has met with general acceptance. *Daubert*, 509 U.S. at 593-94. Schrott fails to establish any of these factors.

Nothing in the record indicates that Dr. Brautbar's opinions have been verified by testing, subjected to peer review or evaluated for potential rate of error. Rather, Schrott claims Dr. Brautbar's opinion is admissible because he produced 695 pages of documents with titles that sound scientific at his deposition. *See* Response at ¶ 2 ("One can tell by the entitlement [sic] of documents whether they are scientific in nature"). Even assuming Dr. Brautbar relied on these documents, the court cannot determine whether his opinion is based on these documents because Schrott has not provided them to the court for review. *See General Electric Co. v. Joiner*, 522 U.S. 136, 145-46 (1997)(expert opinions must be sufficiently supported by materials on which they purportedly rely). In contrast, defendants offer evidence that Dr. Brautbar's theory has not gained general acceptance in the scientific community. *See* Def. Ex. 11-13. Based on this record, Dr. Brautbar's opinions must be excluded under *Daubert*.[2] *See Little v. Cox's Supermarkets, Inc.*, 71 F.3d 637, 641 (7th Cir.1995),

---

[2] Moreover, Schrott fails to establish this result would be different under Illinois law. Unlike the parties in her cited cases, Schrott fails to point to clear policy considerations reflecting a substantial state interest in regulating the admissibility of expert testimony in these types of cases. *See* Pl. Resp. at 3-6 and cases cited therein.

3

*quoting Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994)(internal citation omitted)(the court "is not required to scour the party's various submissions to piece together appropriate arguments").

**B.     Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). "If additional material facts are submitted by the opposing party . . . , the moving party may submit a concise reply in the form prescribed in that section for a response." *Id.* "All material facts set forth in the statement required of [either] party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B).

As an initial matter, Schrott failed to respond to defendants' statement of facts. Therefore, defendants' facts are deemed admitted to the extent they are properly supported by the record. *Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997). Moreover, Schrott supports several additional facts with unauthenticated documents. *See* Pl. Facts at ¶¶ 3-10. *See also* Response at Ex. C-G. When a party presents evidence through exhibits, the exhibits must be identified by affidavit or otherwise made admissible. *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). Schrott's failure to properly authenticate these documents precludes their consideration.

## II. Facts

The following facts are undisputed. On June 26, 1987, Schrott received two Meme implants manufactured by Aesthetech during bilateral breast augmentation surgery. According to Schrott, she began to experience chronic pain after surgery. Specifically, Schrott lost feeling in both breasts. The feeling did not return, despite her doctors' opinion that feeling would return within a few months. On or before April 18, 1988, Schrott reported to her doctors that she experienced a fainting episode, headaches, dizziness, nausea and memory loss. Schrott attributes these symptoms to her breast implants. Schrott claims she never received warning that breast implants could cause these problems.

Between June 26, 1988 and January 26, 1989, Schrott claims her breasts began to harden. In 1989, Schrott reported that her right breast "collapsed and had a drooping appearance." Def. Facts at ¶¶ 13, 29. On November 14, 1989, Schrott had a new implant inserted in her right breast. At the time of surgery, Schrott learned of the possibility that polyurethane foam implants could require replacement after only a short period of time. The implant removed from Schrott had not ruptured prior to replacement. However, it had broken through the capsule surrounding it. According to Schrott, she suffered additional scarring, pain and expense as a result of surgery.

On January 5, 1993, Schrott had her implants removed. Schrott's explant surgeon testified that he removed Schrott's implants to give her peace of mind. Schrott's implants had not ruptured prior to removal. Schrott claims she suffers from neurocardiogenic syncope, intermittent facial droop, slurring of speech, headaches and nausea related to her breast implants.

Schrott filed her first action against defendants in the Circuit Court of Cook County, Illinois on November 8, 1993. Schrott asserted claims for product liability and fraud. During the first

5

action, Schrott never advanced claims for consumer fraud or negligent infliction of emotional distress. Schrott voluntarily dismissed the first action on June 4, 2002. Schrott filed this action on December 31, 2002.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Choice of Law

A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois courts apply Illinois statutes of limitations to claims filed in Illinois, even when Illinois choice of law principles dictate the application of another state's law. *Cox v. Kaufman*, 212 Ill. App. 3d 1056, 1062, 571 N.E.2d 1011, 1015 (1st Dist.1991). The parties do not dispute that Illinois statutes of limitations apply to Schrott's claims.

## III. Statute of Limitations

Defendants assert Schrott's claims are barred by the statute of limitations. Under Illinois law, personal injury and products liability claims must be brought within two years. *See* 735 ILCS 5/13-202 (personal injury); 735 ILCS 5/13-213(d)(products liability). Illinois Consumer Fraud Act claims must be brought within three years and claims for breach of warranty must be brought within four years. *See* 815 ILCS 515/10a(e)(Illinois Consumer Fraud Act); 810 ILCS 5/2-725 (personal injury predicated on breach of warranty). Under Illinois law, the burden is on the plaintiff to prove that the claim has been filed within the limitations period. *Weger v. Shell Oil Co.*, 966 F.2d 216, 218 (7th Cir. 1992), *citing Rukclick v. Julius Schmid, Inc.*, 169 Ill. App. 3d 1098, 1107-08, 523 N.E.2d 1208, 1214 (1st Dist. 1988). According to defendants, Schrott's claims accrued prior to her second surgery on November 13, 1989. Schrott filed her original action in state court on November 8, 1993.

### A. Negligent Infliction of Emotional Distress and Illinois Consumer Fraud Act

As an initial matter, Schrott's negligent infliction of emotional distress and Illinois Consumer Fraud Act claims are barred because she never alleged these claims in her original action. *See Hamilton v. Chrysler Corp.*, 281 Ill. App. 3d 284, 287-88, 666 N.E.2d 758, 760 (1st Dist. 1996)(action must qualify as refiling pursuant to 735 ILCS 5/13-217 in order to escape statute of limitations bar). Illinois' savings provisions "were only intended to be, and can only practicably be, applied to causes where the record in the two suits is such as that by an inspection of the same the court can determine, as a matter of law, that the first was for the identical claim and cause of action set up in the second." *Id.* at 288, 666 N.E.2d at 761. Schrott's original action did not include claims for negligent infliction of emotion distress or consumer fraud. Def. Facts at ¶¶ 22-23, *citing* Def. Ex. D and F. Indeed, Schrott's motion to amend her complaint to include such claims was denied.

7

Def. Facts at ¶¶ 71-73. Under Illinois Supreme Court 219(e), "[a] party shall not be permitted to avoid compliance with discovery deadlines, orders, or applicable rules by voluntarily dismissing a lawsuit." Accordingly, Schrott's negligent infliction of emotional distress and Illinois Consumer Fraud Act claims are barred by the statue of limitations.

**B.     Negligent Failure to Warn, Strict Tort Liability and Illinois Consumer Fraud Act**

Moreover, Schrott cannot establish she is entitled to protection under the discovery rule for any of her personal injury, products liability or Illinois Consumer Fraud Act claims. The discovery rule "delays the commencement of the statute of limitations until 'the plaintiff knows or reasonably should know that [s]he has been injured and that [her] injury was wrongfully caused.'" *Commonwealth Ins. Co. v. Stone Container Corp.*, 323 F.3d 507, 512 (7th Cir. 2003), *quoting Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995). In other words, the limitations period begins when the injury could have been discovered through the exercise of appropriate diligence, not discovery of the actual injury. *Burns Philp Food Inc. v. Cavalea Continental Freight, Inc.*, 135 F.3d 526, 528 (7th Cir. 1998). The court may decide the timeliness of the complaint when only one conclusion may be drawn from the undisputed facts. *McWane, Inc. v. Crow Chicago Industrial, Inc.*, 224 F.3d 582, 585 (7th Cir. 2000), *citing Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 876 (1981).

Schrott claims she began experiencing chronic pain immediately after her breast implant surgery in 1987. By April 18, 1988, she complained to her doctors about a fainting episode, headaches, dizziness, nausea and memory loss. Thereafter, Schrott underwent surgery to replace her right implant on November 14, 1989. At the time of surgery, she learned of the possibility that polyurethane foam implants could require replacement after only a short period of time. Schrott

8

claims she suffered additional scarring, pain and expense as a result of the second surgery. Based on this record, Schrott should have exercised reasonable diligence to determine whether actionable conduct was involved at the time of her second surgery. As a result, summary judgment is appropriate on Schrott's personal injury, product liability and Illinois Consumer Fraud Act claims because a reasonable jury could not conclude that these claims accrued within two or three years of her 1993 state court action.

Schrott's reliance on *Hill v. Pedapati*, 326 Ill. App. 3d 58, 61-2, 759 N.E.2d 1015, 1018 (2nd Dist. 2001), does not change this result. In *Hill*, the court found that the plaintiff's "painful side effects from the radiation treatment . . . were not so clearly outside the realm of what accompanies aggressive cancer therapy that the typical patient would necessarily have reason to suspect that the treatment was administered negligently." In contrast, Schrott does not offer any evidence that the symptoms she experienced in the late 1980s were consistent with symptoms suffered by the typical breast implant patient. Nor does Schrott offer an alternative explanation for her symptoms other than her breast implants. Under these circumstances, defendants' summary judgment motion on Schrott's personal injury, product liability and Illinois Consumer Fraud Act claims must be granted.

### C.   Beach of Implied Warranty

Finally, Schrott fails to prove her breach of implied warranty claim is timely. Section 5/2-725(2) provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

9

810 ILCS 5/2-725(2). In other words, the discovery rule does not apply to claims for breach of implied warranty. *Karpowicz v. General Motors Corp.*, No. 97 C 1390, 1997 WL 285943, at *5 (N.D. Ill. May 23, 1997). It is undisputed that Schrott's claim for breach of implied warranty for the breast implants inserted in 1987 is time barred. Moreover, Schrott fails to offer evidence as to when the breast implant inserted on November 13, 1989 was delivered to her doctor. *See* Compl. at 131 (claim brought against defendants as third party beneficiary). Therefore, summary judgment is appropriate on Schrott's breach of implied warranty claim.

**IV.** **Merits**

Even if Schrott's claims are not barred by the relevant statutes of limitations, her claims fail as a matter of law. Specifically, Schrott fails to offer sufficient evidence to defeat defendants' summary judgment motion.

**A.** **Negligent Failure to Warn, Strict Tort Liability, Illinois Consumer Fraud Act and Breach of Warranty**

With the exception of her claim for negligent infliction of emotional distress, Schrott's complaint requests damages for neurological injury. For each claim, Schrott is required to establish her injuries are linked to her breast implants. *See Lewis v. Lead Industries Assoc., Inc.*, 342 Ill. App. 3d 95, 793 N.E.2d 869, 873 (1st Dist. 2003)("An essential element of a plaintiff's cause of action for any tort is that there be a proximate causal relationship between the act or omission of the defendant and the damages which the plaintiff has suffered"); *Exxon Company, U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839-40 (1996)("Although the principles of legal causation sometimes receive labels in contract analysis different from the 'proximate causation' label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well"); *Adler v. William*

10

*Blair & Co.*, 271 Ill. App. 3d 117, 128, 648 N.E.2d 226, 234 (1st Dist. 1995)("as with any other tort, to sustain a cause of action under the Consumer Fraud Act, the plaintiffs must further allege that damages were proximately caused by the fraud").

Schrott fails to offer any evidence demonstrating that her physical complaints are related to her breast implants. Specifically, Schrott does not come forward with any evidence, including any supporting testimony by Dr. Brautbar, establishing a link between her claimed neurological problems and her implants.[3] Absent evidence of causation, Schrott cannot prove her personal injury, products liability, consumer fraud or breach of warranty claims.

**B.** **Negligent Infliction of Emotional Distress**

Defendants claim Schrott cannot recover for negligent infliction of emotional distress based on her unreasonable fear of cancer. In response, Schrott claims her negligent infliction of emotional distress claim is based on a future risk of cancer. Even accepting Schrott's construction of her claim, it fails as a matter of law.

In order to establish a claim for negligent infliction of emotional distress, Schrott must prove defendants owed her a duty, breached that duty and proximately caused her injury through their breach. *Parks v. Kownacki*, 193 Ill. 2d 164, 181, 737 N.E.2d 287, 296-97 (2000). Schrott fails to offer admissible evidence demonstrating she has a future risk of cancer from her implants. Indeed, she admits she does not have a quantifiable increased risk of future illness, including cancer. Def.

---

[3] Schrott's failure to present expert testimony independently dooms her negligent failure to warn claim. *See Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 398-99, 572 N.E.2d 1030, 1035-36 (1st Dist. 1991)(expert testimony necessary to determine adequacy of warning). Indeed, neither her negligent failure to warn nor her consumer fraud claims can survive without affirmative evidence showing defendants were required to inform her of the risks alleged in her complaint. *See Tom v. Voida*, 963 F.2d 952, 961 (7th Cir. 1992)(plaintiff must come forward with affirmative evidence supporting her case).

Facts at ¶ 61. Therefore, summary judgment on Schrott's negligent infliction of emotional distress claim is proper.

V. **Remaining Defendants**

To date, Schrott has not filed a return of service for Aesthetech or Natural Y. Illinois Supreme Court Rule 103(b) provides:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitations has not run. The dismissal may be made on the application of any defendant or on the court's own motion.

*See also* Fed.R.Civ.P. 4(m). According to defendants, MEC acquired the stock of these corporations on December 14, 1988. As a result, these two corporations are now defunct. On the court's own motion, Aesthetech and Natural Y are dismissed from this action without prejudice based on plaintiffs' failure to exercise reasonable diligence in obtaining service.

## CONCLUSION

Defendants are entitled as judgment as a matter of law on all claims advanced by Schrott. The claims against Aesthetech and Natural Y are dismissed without prejudice.

October 22, 2003                    ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge